ORIGINAL

Magistrate Judge James P. Donohue

FILED
LODGED
ENTERED
RECEIVED

OCT 14 2005

CLERK U.S. DISTRICT COURT
AT SEATTLE
WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

     Plaintiff,

     v.

KIRANPAL KAUR SANDHU,
MUSAKARIM AHMACH,
TAI CHI DANG,
ANTHONY QUANG DAO,
RUPINDER SINGH GILL,
DUNG QUOC PHAN, and
HARPREET SINGH,

     Defendants.

MAGISTRATE'S DOCKET NO.
CASE NO. 05-495M

COMPLAINT FOR VIOLATION
United States Code, Title 21,
Sections 841(a)(1), 841(b)(1)(C),
and 846

05-MJ-00495-CMP

BEFORE James P. Donohue, United States Magistrate Judge, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1
### (Conspiracy to Distribute MDMA and Marijuana)

Beginning at a time unknown, but within the past five years, and continuing until on or about October 13, 2005, in King County, within the Western District of Washington, and elsewhere, HARPREET SINGH, RUPINDER SINGH GILL, and KIRANPAL KAUR SANDHU, and others, known and unknown, knowingly and intentionally did conspire to distribute methylenedioxymethamphetamine (MDMA), commonly known as "ecstasy", and marijuana, substances controlled under Schedule I, Title 21, United States Code, Section 812.

COMPLAINT/ SANDHU, ET AL. – 1
05-495M

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846.

## COUNT 2
### (Possession With Intent to Distribute Marijuana)

Beginning at a time unknown, but within the past five years, and continuing until on or about October 13, 2005, in King County, within the Western District of Washington, and elsewhere, TAI CHI DANG and DUNG QUOC PHAN, and others, known and unknown, knowingly and intentionally did possess with intent to distribute marijuana, a substance controlled under Schedule I, Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT 3
### (Possession With Intent to Distribute MDMA)

Beginning at a time unknown, but within the past five years, and continuing until on or about October 13, 2005, in King County, within the Western District of Washington, and elsewhere, TAI CHI DANG, ANTHONY QUANG DAO and MUSAKARIM AHMACH, and others, known and unknown, knowingly and intentionally did possess with intent to distribute methylenedioxymethamphetamine (MDMA), commonly known as "ecstacy," a substance controlled under Schedule I, Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and Title 18, United States Code, Section 2.

And the complainant further states:

1.      I, Nathan Clammer, am a Special Agent with United States Immigration and Customs Enforcement located in Seattle, Washington.  I am currently assigned to the

COMPLAINT/ SANDHU, ET AL. – 2
05-495M

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Drug Unit. I am responsible for enforcing federal laws concerning narcotics and controlled substance violations. I have received professional federal law enforcement training and am experienced in the methods used by narcotics traffickers to smuggle, transport, conceal, and distribute narcotics.

2. The information in this affidavit is based upon my own participation in the investigation together with my conversations with other law enforcement officers involved in the investigation

3. I received information in early 2005 that a warehouse located at 7112 220th Street S., Kent, Washington, had been rented to Kiranpal Sandhu, a Canadian citizen. I was told by employees of the property management company and employees of the neighboring businesses that they were suspicious of the activities occurring at the warehouse. The rent for the warehouse was approximately $2700.00 and the tenant's stated use to the property management company was to store commercial furniture. An employee of one of the neighboring businesses thought that the warehouse was vacant until he observed several cars show up late at night and the occupants go in and out of the warehouse. The employee thought people going in and out of the warehouse appeared nervous and thought this to be suspicious.

4. I am generally aware, based on prior investigations, that others have used similar practices or methods of selling and distributing controlled substances. Specifically, I was involved in a prior investigation in which Canadian residents rented commercial space in the Kent, Washington area. The tenants represented that the space was being used for legitimate business purposes. In fact, the leased space was used to stage controlled substances. The substances were concealed in legitimate packaging to disguise the true contents. In those cases, the tenants and their associates would meet their "clients" at nearby fast food restaurants. The tenants and their associates would take their "client's" vehicle back to the leased space, leaving the "client" at the restaurant. Once at the leased space, the "client's" vehicle would be driven inside and loaded with controlled substances. The vehicle would then be returned to the "client" who would

COMPLAINT/ SANDHU, ET AL. -- 3
05-495M

immediately depart the restaurant. The process described above was used at at least four separate leased commercial spaces.

5. In approximately April of 2005 I began marking the door to the warehouse and noticed that it was being accessed approximately once a week. Due to the fact that activity was rarely noticed by anyone, I believe that the warehouse was usually accessed at night. In August 2005, it appeared that the warehouse was no longer being accessed. On October 5, 2005, Kiranpal Sandhu crossed the border into the United States and was sent to Customs Secondary. In the car with Kiranpal Sandhu was her husband, Jaspal Sandhu. She stated that she was taking him to court in Okanogan County, Washington, where he had been arrested for possession of approximately 716 lbs of marijuana on August 24, 2005.

6. On October 13, 2005, Kiranpal Sandhu came back into the US alone. She advised Customs Officers that she was going shopping in the area of exit 202, off Interstate 5. After clearing Customs, Sandhu was kept under surveillance by ICE agents. She passed exit 202 and got off of the Freeway at exit 200. She met with Rupinder Gill, who was driving a rental vehicle with Canadian license plates. Sandhu got into Gill's vehicle and left her vehicle in the area. They drove to a business a short distance away and bought a pallet jack. They then drove to Martin Luther King Jr. Way in Seattle and got off of the freeway. They contacted the driver of a tractor-trailer truck, which was bearing Canadian license plates. Gill got into the tractor-trailer with the driver, Harpreet Singh, and then they proceeded to follow Sandhu as she drove the rented van.

7. They took an indirect route through back streets of Tukwila and Kent as they drove to the warehouse at 7112 220th Street S., Kent, Washington. The tractor-trailer backed up to the loading dock of the warehouse. Sandhu, Gill and Singh went into the warehouse. I was able to see that people were moving back and forth between the trailer and the warehouse and I believed they were unloading the trailer. The truck then left the area and drove North, while agents maintained surveillance on it.

COMPLAINT/ SANDHU, ET AL. – 4
05-495M

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## ARREST OF TAI DANG

8.      Gill and Sandhu left the warehouse and drove to a McDonalds restaurant in the area.  They contacted Tai Dang, who was driving a pick-up truck.  They took his truck and left him at the restaurant.  They drove back to the warehouse and took the truck inside.  A few minute later they brought the truck back out and returned it to Dang.  (This is the same method used by Canadian drug smugglers that I have observed in the past.)  Dang got into his vehicle and drove south on SR 167.  I followed Dang out of the area and observed that the entire back of the truck was full of large bags.  We stopped the vehicle and found that the back of the truck contained large bags of peat moss with marijuana inside.  Later we also found that there was a large quantity of ecstasy in these bags.

## ARREST OF DUNG PHAN

9.      After returning DANG"s vehicle, Gill and Sandhu returned to the warehouse.  A short time later they again drove back to the McDonalds, where they contacted Dung Phan, who was driving a Lexis Sedan.  They took the Lexis to the warehouse and left Phan at the restaurant.  They took the vehicle into the warehouse and then a short time later came back out.  They returned the Lexis to Phan and then drove back to the warehouse.  Phan drove out of the area and was stopped by agents.  His vehicle was searched and found to contain two bags of peat moss, which also contained marijuana.  He was then placed under arrest.

## ARREST OF ANTHONY DAO AND MUSAKARIM AHMACH

10.     After returning Phan's vehicle, Gill and Sandhu returned to the warehouse.  A short time later they again drove back to the McDonalds, where they contacted Anthony Dao, who was driving a minivan.  They took the vehicle to the warehouse and left Dao, who also had his mother Thu Nguyen with him, at the restaurant.  They took the vehicle into the warehouse and then a short time later came back out.  They returned the minivan to Dao and then drove out of the area.  Doa drove several blocks West to a business. He got out of the car and walked toward the business.  At that point he was

COMPLAINT/ SANDHU, ET AL. – 5
05-495M

detained. Next to him was a bag, containing a large quantity of ecstasy. Inside his vehicle was $30,000.00 in US Currency.

11.    Inside the business Dao had been walking to was Ahmach Musakarim, who was an employee and who was watching the arrest. Agents noticed that the business was open, even though it was approximately 9:00 pm and the sign said it closed at 7:00 pm. Ahmach stated that he was not the owner of the business and that he did not know Dao. He also stated that he had never seen Dao and did not know why he would be coming there. Ahmach gave agents consent to search the business. He was asked if he had a cell phone but he stated that he had left it at home. A short time later a cell phone under the counter started ringing. Agents retrieved the phone and noticed that the last number received by the phone was from someone named "Tony." When this number was called, Dao's phone rang. Both Dao and Ahmach were then arrested.

ARREST OF KIRANPAL SANDHU, RUPINDER GILL, AND HARPREET SINGH

12.    After returning Dao's car to him, Gill and Sandhu got into the rented van and drove out of the area. They were then stopped by agents and taken into custody. Gill denied being in the warehouse even after photos of him standing in the doorway of it were shown to him. Singh was followed to an apartment in Snohomish County. Once there, agents contacted him in his apartment and placed him under arrest.

_____
NATHAN F. CLAMMER, Complainant
United States Immigration and Customs
Enforcement

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the defendant committed the offenses set forth in the Complaint.

Dated this ___14th___ day of October, 2005.

_____
JAMES P. DONOHUE
United States Magistrate Judge

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970